UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:  8/31/2021

OJINIKA IKEDILO, M.D.,

                                Plaintiff,

                        v.

MONTEFIORE MEDICAL CENTER, MINDY
STATTER, M.D., JODY KABAN, M.D., SCOTT
MELVIN, M.D.,

                                Defendants.

No. 19-CV-9967 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Ojinika Ikedilo brings this action alleging that the conduct of Defendants Montefiore Medical Center ("Montefiore") and Montefiore Doctors Mindy Statter, Jody Kaban, and Scott Melvin, culminating in the termination of her position in a surgical residency program, constituted discrimination on the basis of race, national origin, sex, pregnancy, and pregnancy disability in violation of various federal antidiscrimination statutes as well as state and local human rights laws.   On September 30, 2020, the Court granted Defendants' motion to dismiss the complaint on the grounds that Plaintiff's claims under Title VI of the Civil Rights Act of 1866 ("Title VI"), Section 504 of the Rehabilitation Act ("Section 504"), and Title IX of the Education Amendments of 1972 ("Title IX") were largely time-barred, and that she otherwise failed to adequately plead a violation of federal law.   The Court nonetheless granted Plaintiff leave to amend her complaint, which she timely filed.   Now before the Court is Defendants' motion to partially dismiss that amended complaint.   Finding that the amended complaint largely fails to adequately cure the deficiencies identified in its prior opinion, the Court grants the motion in part, and denies it in part.

## BACKGROUND

The Court assumes familiarity with the factual background of this case, which was recounted in its previous opinion, *Ikedilo v. Statter*, No. 19-CV-9967 (RA), 2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020) ("*Ikedilo I*"). The following is a brief overview of those facts and procedural history that are relevant to the instant motion.

### I.     Factual Background

The following facts alleged in the First Amended Complaint ("Complaint") are assumed to be true for the purposes of this motion. *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Plaintiff is a Black woman of Nigerian descent who was enrolled in a surgery residency program (the "Program") at Montefiore from July 2011 until June 2016. *See* Compl. ¶¶ 4, 11, 106, 141. Defendant Montefiore is a New York-based educational institution, and the employer of Defendants Statter, the Program Director, Kaban, the Assistant Program Director, and Melvin, who was part of the "House Committee responsible for the [] Program" (collectively, the "Individual Defendants"). *Id.* ¶¶ 5-9.

Plaintiff began her stint in the Program as a "PGY1 preliminary intern" on July 1, 2011, progressing to the third year in the Program (PGY3) by 2013. *Id.* ¶¶ 11-15. Plaintiff was the only Black PGY3 resident at that time. *Id.* ¶ 23. During that third year, Plaintiff became pregnant and requested that she be permitted to temporarily abstain from performing procedures involving radiation. *Id.* ¶¶ 16-17. Because of that request, Plaintiff alleges, she was "not liked" during that month. *Id.*

Plaintiff gave birth to her child in June 2014 and returned to work on July 14, 2014 as a PGY4 resident. *Id.* ¶ 27. Upon her return, Plaintiff noticed that several surgeons began acting

"negatively toward her," which she alleges was a direct result of Defendant Statter's pressures on staff "to ensure that Plaintiff did not successfully graduate from the Program." *Id*. ¶¶ 28-29. According to Plaintiff, Statter continuously singled her out for criticism, and reprimanded her in front of her peers. *See id*. ¶¶ 31-36.

In February 2015, Plaintiff was offered a PGY5 contract for the 2015-2016 academic year, which she accepted. *Id*. ¶ 37. The following month, upon the release of the results of the annual American Board of Surgery In-Training Examination ("ABSITE"), *see Ikedilo I,* 2020 WL 5849049, at *3 n.1, Statter "was not happy" that most of the residents "performed poorly" on the exam. Compl. ¶ 38. Statter did not, however, set a percentile goal for residents. *Id.* ¶ 38. Nor had Montefiore ever instituted a percentile requirement to graduate. *Id.* ¶ 53. According to Plaintiff, not only do "ACGME Rules state that residents should not be held back because of low ABSITE scores,"[1] but "not a single resident had been held back due to a low ABSITE score" in the Program's "ten-year history." *Id.* ¶¶ 43-44, 71.

In March 2015, Plaintiff emailed Statter to request a letter of recommendation for a fellowship; Plaintiff never obtained that recommendation. *Id.* ¶ 40. Instead, Statter "asked if Plaintiff would repeat her PGY4 year," ostensibly due to her poor ABSITE performance. *Id.* ¶¶ 40, 43. Plaintiff alleges that many white residents had been promoted despite scoring below the 30th percentile on the ABSITE; the Complaint identifies several such individuals who were promoted between 2013 and 2016. *See id.* ¶¶ 51-62. By contrast, a Black resident of Nigerian descent who "score[d] less than 10th percentile during his PGY 4 year [] was held back for remediation and asked to repeat the whole year by Dr. Statter," although he ultimately graduated. *Id.* ¶¶ 63-64.

---

[1] ACGME stands for the Accreditation Council for Graduate Medical Education. *See Ikedilo I,* 2020 WL 5849049, at *3 n.2.

On March 26, 2015, Plaintiff learned in a meeting with her mentor and Statter that she had received several "bad evaluations," and would have to repeat the PGY4 year.  *Id.* ¶¶ 72, 75. During that meeting, Plaintiff explained that her difficult pregnancy and new child had made it difficult to study for the ABSITE, telling Statter that "it was unfair to single her out and treat her differently when . . . no one else was being held back."  *Id.* ¶ 75.  On May 1, 2015, Defendant Statter emailed Plaintiff and advised her that the relevant committee did not have enough evidence to make a decision as to whether Plaintiff should repeat PGY4 or not.  *Id.* ¶ 82.  Statter asked Plaintiff to perform additional clinical work over the following two weeks.  *Id.*  Although Plaintiff substantially complied with that request, she "received a letter in June 2015, directing that she should repeat PGY4."  *Id.* ¶ 87.  Plaintiff appealed that decision to "the Board."[2]  *See id.* ¶¶ 90, 154.

Meanwhile, she began repeating the year, during which she was allegedly subject to a "hostile work environment"—in which she was "yelled at openly," told that "she was clumsy," and received a "bad evaluation"—that made her afraid to go to work.  *Id.* ¶¶ 90-93.  On November 8, 2015, Plaintiff was informed that her appeal had been denied, and that she would have to repeat the fourth year of the Program.  *Id.* ¶ 95.  That December, despite having been told by her mentor in her semi-annual review the month prior that she "met all the requirements for the half year," Plaintiff learned that Statter had changed "Plaintiff's medical knowledge to 'requires attention'" on her milestone review.  *Id.* ¶¶ 96-98.  Plaintiff alleges that this review "did not correlate with her evaluations which were good," unlike in the cases of other non-Black residents.  *Id.* ¶ 99.

---

[2] According to Montefiore's bylaws, "the Board shall uphold the decision of the Committee" to terminate a resident if that decision is "grounded on facts."  *Id.* ¶ 154.  Nowhere in the Complaint does Plaintiff specify the makeup of the Board or the scope of its authority, although she does on one occasion refer to that body as the "Appeal Board," *see id.* ¶ 162.

Plaintiff received and executed her PGY5 contract in January 2016.  *Id.* ¶ 102.  She took the ABSITE on February 2, 2016 and received the results in March.  *Id.* ¶ 103.  Plaintiff once again "performed poorly."  *Id.*  In March 2016, Plaintiff informed some attendings and residents that she was pregnant "and sought an accommodation because she needed to undergo a procedure." *Id.* ¶ 105.  On April 18, 2016, Plaintiff was informed in a meeting with Statter and Melvin that her residency would be terminated by the end of June.  *Id.* ¶ 106.  "When Plaintiff asked why she would not be promoted[,] . . . Statter informed her that she did not receive an ABSITE score above [the] 30th percentile, in addition to her un-professionalism, not communicating with her team and her technical skills."  *Id.* ¶ 107.  Plaintiff then pointed out to Statter that one white resident had been promoted despite scoring less than the 10th percentile on the ABSITE, as had two other white residents although "they had not passed the USMLE III."[3]  *Id.* ¶ 109.   Statter purportedly responded that she "was aware of that fact," and did not believe that Plaintiff's evaluations were accurate.  *Id.* ¶¶ 109-110.  According to Plaintiff, "Statter's stated reasons for terminating Plaintiff's residency were pretextual," and that the "only reason/s for her dislike of [P]laintiff is [her] race, national origin and pregnancies."  *Id.* ¶¶ 113-114.

Sometime thereafter, Defendants Melvin and Statter "asked Plaintiff to resign from the program and avoid the appeal process."  *Id.* ¶ 124.  On April 27, 2016, Plaintiff emailed Statter to inform her that she would be appealing the decision not to promote her to PGY5.  *Id.* ¶ 127.  Plaintiff subsequently applied for a surgical critical care fellowship at Westchester Medical Center ("WMC") and was offered the position, pending receipt of a summary evaluation from Montefiore.

---

[3] "The United States Medical Licensing Examination ('USMLE') is a three-step test.
*See* https://www.usmle.org/step-3/. Step 3 is the final examination in the USMLE sequence leading to a license to practice medicine in the United States without supervision. Step 3 provides a final assessment of physicians assuming independent responsibility for delivering general medical care." *Ikedilo I,* 2020 WL 5849049, at *6 n.3.

*Id.* ¶ 132-33.   A week after Plaintiff requested that evaluation, Statter, through a colleague, informed her that she would either not send the evaluation or send a bad evaluation unless Plaintiff resigned and withdrew her appeal.  *Id.* ¶ 135.  On July 27, 2016, after Plaintiff told Statter that her conditions amounted to blackmail, Statter allegedly advised Plaintiff that she would be paid her July salary, that her "benefit would be reinstated," and that Statter would send Plaintiff's evaluation to WMC.  *Id.* ¶¶ 138-140.

The appeal process culminated in November 6, 2016, "when Plaintiff was advised that she would be reinstated into the program by July 1, 2017, provided that by March 31, 2017, she advised the Department of Surgery that she had passed the USMLE Step 3 examinations and she ha[d] taken the ABSITE examination by January 27, 2017 and achieved at least [a] 30th percentile score." *Id.* ¶¶ 155-156.   That same day, Plaintiff gave birth to her second child and was diagnosed with a thyroid condition that was believed to be cancerous.  *Id.* ¶¶ 156-158.   "Having very little time to study for the ABSITE" due to her newborn and health conditions, Plaintiff's score on the January 2017 ABSITE "was also poor."  *Id.* ¶ 158.

At some point thereafter, Plaintiff "asked for another opportunity" to take the ABSITE and "an accommodation in light of her medical, pregnancy and/or child birth situation but Defendants have failed to give [the] same to Plaintiff."  *Id.* ¶ 161.   "The Department of [S]urgery has also refused to provide [P]laintiff with a letter of recommendation from the program director which is also required to apply elsewhere."  *Id.* ¶ 166.

## II.     Procedural History

Plaintiff initiated this action on October 28, 2019, alleging that Defendants' conduct towards her during her residency program amounted to unlawful discrimination, a hostile work environment, and retaliation on account of her race, national origin, pregnancy and pregnancy

disability.  The complaint also asserted that Defendants' refusal to permit her another opportunity to take the ABSITE test in 2017 constituted a failure to reasonably accommodate her pregnancy and pregnancy-related disability.  Plaintiff brought twenty causes of action pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VI, Section 504, Title IX, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the common law.

Defendants subsequently filed a motion to dismiss, which the Court granted in full on September 30, 2020.  *See Ikedilo I,* 2020 WL 5849049.  The Court concluded that Plaintiff's claims, to the extent they challenged conduct that occurred prior to October 28, 2016, were barred by the three-year statute of limitations applicable to Title IX, Title VI, and Section 504.  *Id.* at *7. Similarly, claims against the Individual Defendants were dismissed on the basis that none of those three statutes authorize private rights of action against individuals.  *See id.* at *8.  With respect to the Section 1981 claim stemming from Defendants' refusal to promote Plaintiff to PGY5 in 2016, the Court concluded that Plaintiff had failed to plead facts sufficient to give rise to an inference of discrimination.  *Id.*  The Court dismissed *sua sponte* Plaintiff's claims regarding Statter's failure to timely send the evaluation summary to WMC on the basis that she did not plausibly allege that race was a but-for cause for the delay, or that Plaintiff experienced any injury as a result.  *Id.* at *9.  To the extent that Plaintiff asserted that Statter's behavior was in retaliation for Plaintiff's speaking out against discrimination at Montefiore, the Court dismissed the claim for failure to plausibly allege the requisite element of engagement in a protected activity.  *Id.* at *10.  The Court dismissed Plaintiff's claims for failure to accommodate her request to retake the ABSITE after 2017 on the grounds that her request constituted a substantial modification to their program rather than a reasonable accommodation.  *Id.*  Lastly, the Court held that Plaintiff failed to plausibly

allege acts giving rise to a hostile work environment claim under any federal statute.  *Id.* at *11. Having dismissed all of Plaintiff's federal claims, the Court declined to exercise supplemental jurisdiction over those causes of action sounding in state or municipal law.  *Id.* at *12.

The Court nonetheless granted Plaintiff leave to amend her complaint to the extent that she had a "good faith basis" to do so.  *Id.*  Plaintiff timely filed the operative Complaint, bringing sixteen causes of action.  In relevant part, the Complaint incorporates new allegations that Defendants had not imposed the same promotion requirements on similarly situated non-Black students, and that Plaintiff made Statter aware of this disparate treatment in April 2016.  On November 13, 2020, Defendants filed the instant motion for partial dismissal of the Complaint, conceding that Plaintiff adequately pled Section 1981 claims of race discrimination, stemming from Montefiore's failure to promote Plaintiff in 2016, and Statter's provision of a negative milestone review in December 2015.  *See* Dkt. 39 ("Mot.").

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In making that determination, the Court must accept as true all well-pled factual allegations and draw from them all reasonable inferences. *See, e.g., Dane v. UnitedHealthcare Ins. Co.,* 974 F.3d 183, 188 (2d Cir. 2020).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 189 (internal quotation marks omitted).

**DISCUSSION**

I.     **Statute of Limitations**

As a threshold matter, Defendants argue that the statute of limitations bars the bulk of Plaintiff's claims under Title VI, Section 504, Title IX, the NYSHRL, and the NYCHRL. Acknowledging that it is the law of the case that all federal causes of action concerning her 2016 termination began to run in April 2016, *see Ikedilo I,* 2020 WL 5849049, at *7, Plaintiff argues only that her state and municipal claims did not accrue until November 2016, when Montefiore's appeal board issued its final decision.  *See* Dkt. 44 ("Opp.").  The Court did not reach the merits of Plaintiff's state claims in *Ikedilo I.*  It nonetheless agrees with Defendants, for the reasons that follow, that all claims under the aforementioned statutes are time-barred with the exception of the sixteenth cause of action, which concerns Defendants' failure to accommodate Plaintiff's 2017 request to retake the ABSITE the following year.

Both parties agree that the statute of limitations for claims under both state and municipal law is three years.  *See, e.g., Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing NY C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–502(d)).  Their positions diverge, however, on the date on which such a claim accrues in the context of termination.

In *Ikedilo I,* the Court held that Plaintiff's Section 1981 claim regarding Defendants' failure to promote Plaintiff to PGY5 accrued in June 2015—when Plaintiff received a letter that directed her to repeat PGY4—rather than November of that year, when Plaintiff learned that that decision had been upheld on appeal.[4]  2020 WL 5849049, at *7.   In so doing, the Court relied on *Delaware State College v. Ricks*, 449 U.S. 250, 257-61 (1980), in which the Supreme Court held that the plaintiff's Section 1981 claim ripened on the date that the decision regarding his tenure was "made

---

[4] As noted above, Plaintiff's claims for race discrimination under Section 1981 are not the subject of Defendants' motion, and therefore will not be dismissed.

and communicated," rather than the date of actual termination or when his grievance was denied. If the Court were to apply that same standard to the claims challenging Plaintiff's termination, it would necessarily conclude that her claims accrued in April 2016 when Defendants communicated their position to her.

Plaintiff maintains, however, that a different standard should be applied to claims sounding in New York law. Her argument relies primarily on *Pauk v. Board of Trustees*, 654 F.2d 856 (2d Cir. 1981), in which the Second Circuit surveyed several decisions by New York state courts that held that the duties of university boards of trustees to make academic decisions, including those related to hiring, are "non-delegable." Opp. at 3-4. In Plaintiff's view, because the "Board" had the ultimate authority to "accept, reject, or modify" any decision to terminate her, it is the "Board action" that triggers the statute of limitations. *Id.* at 4. The Court is unpersuaded. As an initial matter, the cases on which Plaintiff relies all concern the appointment, promotion, and tenure of university faculty, specifically "the Board [of Trustees'] ability to reject a faculty committee's positive recommendation of tenure." *Pauk*, 654 F.2d at 860. The Complaint, which asserts only that "Montefiore's bylaws provided that the [Appeal] Board shall uphold the decision of [the] Committee if it found it grounded in facts," Compl. ¶ 155, contains no allegations that this "Board" is equivalent to a University Board of Trustees, or that its duties are non-delegable in the way envisioned by *Pauk.*

Even if the Court were to make such an inference, it is still not persuaded that the existence of an appeals process bears on the statute of limitations for claims of discriminatory termination. "A claim under the NYSHRL must . . . be filed within three years of the *alleged discriminatory act*." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) (emphasis added) (citing *Murphy v. American Home Prods. Corp.*, 461 N.Y.S.2d 232, 238–40 (1983)). Relatedly, the

Second Circuit has "observed that claims brought under New York State's Human Rights Law are analytically identical" to claims brought under federal laws prohibiting discrimination in employment. *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (internal quotation marks omitted); *see also Aboeid v. Saudi Arabian Airlines Corp.,* 959 F. Supp. 2d 300, 308 (E.D.N.Y. 2013) ("The standards governing claims pursuant to section 1981 and the NY[S]HRL are identical.").

Consistent with those precedents and with the principle outlined in *Ricks,* the Circuit has held that claims of employment discrimination under both the NYSHRL and the NYCHRL accrue on the date on which a plaintiff receives "a definite notice of [] termination," *i.e.*, "the date on which defendants [] establish[] their official position and ma[ke] that position apparent to the plaintiff." *Delaney v. Farley,* 623 F. App'x 14, 16 (2d Cir. 2015) (citing *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir. 1985); *Flaherty v. Metromail Corp.,* 235 F.3d 133, 137 (2d Cir. 2000); *Economu v. Borg–Warner Corp.,* 829 F.2d 311, 315 (2d Cir. 1987)) (brackets omitted). Plaintiff points to no case holding either that the pendency of an appeal tolls the statute of limitations under state or municipal law or that a decision on appeal upholding a discriminatory act may itself qualify as an act of discrimination.   The caselaw points the other way.  For example, in *Miller v. International Telephone and Telegraph Corp.,* the Second Circuit concluded that the plaintiff received a definite notice of termination when he was orally informed "that he would, absent exceptional circumstances, be removed from the payroll," despite the fact that the personnel department had not yet approved that decision.   755 F.3d at 24.   "As in *Ricks*, … the mere possibility that the decision [to terminate] might be reversed [is] not enough to label it advisory or ineffective for time-bar purposes." *Id; accord Pinder v. City of New York*, 853 N.Y.S.2d 312, 313 (N.Y. App. Div. 2008) ("Contrary to plaintiff's argument that her claim did not accrue until she

had exhausted all administrative remedies, an employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to plaintiff, and the possibility that the determination may be reversed is insufficient to toll the limitations period.")

The Court thus holds that the "alleged discriminatory act" with respect to the termination of Plaintiff's residency took place on April 18, 2016, when Defendants Statter and Melvin "informed … [Plaintiff] that her residency would be terminated by the end of June, 2016," Compl. ¶ 106.  The fact that that decision could later be accepted, modified, or rejected by an "Appeal Board," *see id.* ¶ 161, does not compel a conclusion that the notice of termination provided by the committee was not definite.  As of April 18, 2016, Defendants' position on the future of Plaintiff's employment at Montefiore was apparent to her.  That she applied for a fellowship position at another institution during the pendency of that appeal further supports the conclusion that the April 2016 notice of termination was definite.  Importantly, this result is consistent with the Court's treatment of Plaintiff's federal claims, which are time-barred for the same reason.  Because Plaintiff makes no allegations that any discriminatory conduct occurred after October 28, 2016 other than the failure to reasonably accommodate her second pregnancy, her claims under the NYSHRL and NYCHRL must be dismissed.

Similarly, as the Complaint clearly indicates that Plaintiff did not work at Montefiore any time after July 2016, her claims of hostile work environment—her eighth and eleventh causes of action—must also be dismissed as time-barred.[5]  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 117 (2002) (holding that claims for hostile work environment are timely insofar as "an act contributing to the claim occurs within the filing period").

---

[5] In contrast to the original complaint, Plaintiff does not bring claims for hostile work environment under Section 1981.  *See* Compl. ¶¶ 185-186, 191-192.

Plaintiff's fourth and fifth causes of action, to the extent that they assert that Montefiore's "continued" refusal to provide her with a recommendation constitutes unlawful retaliation, are also time-barred.  The Complaint contains only one specific allegation that Plaintiff requested a recommendation.  That request was made in March 2015, *see* Compl. ¶ 179, well before the four-year statute of limitations under Section 1981 began to run.  *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 383 (2004) (holding that Section 1981 claims for employment discrimination are subject to a four-year statute of limitations).  The only other potentially relevant allegation, that "the department of surgery has also refused to provide plaintiff with a letter of recommendation from the program director," contains no specifications as to dates, nor does it indicate that Plaintiff actually requested such a recommendation.  Compl. ¶ 166.  Accordingly, the Court cannot conclude that Plaintiff has adequately pled a timely violation of any law stemming from the failure to furnish a recommendation.

In sum, the only claims that Defendants move to dismiss which are not time-barred are: the second and third causes of action, asserting that Statter's failure to timely send her summary evaluation to WMC in July 2016 violated Section 1981; the twelfth, thirteenth, fourteenth, and fifteenth causes of action, asserting common law breaches of contract and implied contract stemming from the failure to promote Plaintiff in 2015 and 2016; and the sixteenth cause of action, which asserts that Defendants failed to reasonably accommodate Plaintiff's second pregnancy, in violation of Title IX, Section 504, state, and municipal law.  The Court addresses the merits of each claim in turn.

### III.    Counts 2 and 3: Defendants' Failure to Send the Summary Evaluation to WMC

Defendants move to dismiss Plaintiff's second and third causes of action on the bases that she fails to plausibly allege that she suffered any injury as a result of Statter's delay in furnishing the summary evaluation to WMC—even though she allegedly could not begin her fellowship until that evaluation was received—and that her race was the but-for cause of any such delay.  The Court agrees, having previously dismissed those claims on the same grounds.  *See Ikedilo I,* 2020 WL 5849049, at *9.

The Amended Complaint does not adequately cure either of the deficiencies previously identified by the Court.  With respect to causation, Plaintiff again fails to allege any plausible connection between her race and the delay in sending her evaluation summary.  Plaintiff does not set forth any factual allegations that would indicate either intentional discrimination or disparate treatment.   Absent an allegation, for example, that Statter ever commented on Plaintiff's race, or provided evaluations in a prompter fashion for residents of other races, the Court cannot infer that Statter would have sent Plaintiff's evaluation summary sooner if not for her race.  Pleading such a causal connection is required to withstand a motion to dismiss.  *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).   The conclusory allegations that "black Nigerians were treated less favorably," Compl. ¶ 23, or that Plaintiff was "singled out … on account of her race," *id.* ¶ 50, do not suffice to establish the requisite causal connection with the summary evaluation.  Nor do the claims of disparate treatment with regard to promotion.

Similarly, the Complaint contains no new allegations of injury.  As before, Plaintiff alleges that her salary, compensation and health insurance was set to lapse by "the end of July, 2016," presumably because of her termination from Montefiore Program.  Compl. ¶ 131.  Yet, on "July 27, 2016, Dr. Statter called Plaintiff to advise that Plaintiff would be paid her July salary, that her

benefit would be reinstated, and that she would send her (Plaintiff's) summary of evaluation to WMC," *id.* ¶ 140, indicating that Plaintiff was provided with all that she was due under her contract with Montefiore.  Plaintiff does not allege that any wages or employment benefits were withheld pending the preparation of the summary evaluation.  Plaintiff also successfully completed her fellowship at WMC, suggesting that any delay did not affect her future employment prospects.  In her opposition, Plaintiff contends that she suffered "actual pecuniary loss" from Statter's delay because the fellowship position paid an additional $4,000 per year.  Opp. at 13.  As Defendants correctly note, however, that argument finds no support in the Complaint and is therefore irrelevant to the instant motion.  *See Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." (internal quotation marks omitted)).  Plaintiff does not allege that the temporary withholding of her evaluation delayed her start date at WMC, or that it resulted in any lost earnings.  Indeed, Plaintiff does not even specify the length of this delay.  Accordingly, the Court again finds that Plaintiff fails to adequately plead any concrete injury.  Plaintiff's second cause of action must therefore be dismissed.

Plaintiff's third cause of action, asserting that the delay constituted unlawful retaliation in violation of Section 1981, fails for similar reasons.  To establish a *prima facie* case of unlawful retaliation under that statute, Plaintiff must plausibly allege "(1) that [s]he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  Although the Court previously

dismissed this claim on the basis that Plaintiff did not plausibly allege engagement in protected activity, *Ikedilo I,* 2020 WL 5849049, at *10, the Complaint contains additional allegations that Plaintiff informed Statter in April 2016 that three white classmates had been promoted despite having similarly low test scores as the ones which purportedly justified her termination.  Compl. ¶¶ 107-109, 175.

Even if the Court were to assume that Plaintiff's alleged communication of disparate treatment constitutes protected activity, however, she has still failed to plead a *prima facie* case of retaliation, because she does not plausibly allege that any adverse employment action occurred within the relevant timeframe.  As discussed above, the Complaint contains no well-pled allegations of injury occasioned by the delay in the submission of her evaluation.  For similar reasons, that delay does not, as matter of law, qualify as adverse action, even if the definition of adverse action in the retaliation context "covers a broader range of conduct" than in the discrimination context, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *see also Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) ("Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles" (footnote omitted)). Plaintiff had already been terminated by Montefiore when the alleged delay occurred.  She had received a notice of termination months earlier.  In light of these circumstances, it is difficult to fathom how the delay in sending a recommendation to another employer following termination constitutes adverse action within the meaning of federal antidiscrimination law.  *See Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 341 (S.D.N.Y. 2009) (holding that failure to provide a recommendation letter to prospective employers did not constitute adverse action where challenged conduct occurred after plaintiff's separation from employer, and employer did not spread "negative information or references to a prospective employer").

"An adverse employment action in a retaliation case includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan v. City of New York*, 888 F.3d 612, 626–27 (2d Cir. 2018) (internal quotation marks omitted). Here, Plaintiff does not allege that she suffered any harm as a result of this delay. Nor could a reasonable juror conclude that such an action would dissuade a reasonable employee from making discrimination complaints. Because a short delay in submitting an evaluation to another employer that had no apparent effect on Plaintiff's employment prospects does not qualify as an adverse action, the third cause of action is dismissed.

## IV.  Count 16: Claim for Failure to Accommodate

Plaintiff also maintains that Defendants' refusal to grant her request to retake the ABSITE in 2017 constituted a failure to reasonably accommodate her pregnancy and pregnancy disability, in violation of Title IX, Section 504, the NYSHRL, and the NYCHRL. Compl. ¶¶ 210-213. Insofar as that claim asserted violations of federal law, the Court previously held it to be inadequately pled because the accommodation that Plaintiff requested would constitute a "substantial modification" to Montefiore's Program. *Ikedilo I,* 2020 WL 5849049, at *10-11. Finding that the Complaint contains no new allegations that would cure this defect, and that the requested accommodation was not reasonable under either federal, state, or municipal law, the Court again dismisses this claim.

The Supreme Court has expressly held that Section 504, which prohibits discrimination against an "otherwise qualified handicapped individual" in federally funded programs "solely by reason of [her] handicap," "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 405, 413 (1979). As described by the Second Circuit, Section 504

"does not require the perfect elimination of all disadvantage that may flow from the disability; it does not require a lowering of standards . . . nor that the employer make fundamental or substantial modifications in order to eliminate the disadvantages flowing from the disability." *Fink v. New York City Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995). Applying these standards, this Court previously held that Plaintiff's request—to provide her a fourth opportunity to take an annually administered exam on which she had scored below the 30th percentile on three prior occasions, and permit her to serve as a fifth-year surgical resident in the interim—would constitute such a modification to Montefiore's residency program. *Ikedilo I,* 2020 WL 5849049, at *10. In her opposition, Plaintiff does not dispute the Court's characterization of her request in the context of federal law. Nor could she. Plaintiff's proposed accommodation effectively asked Montefiore to rescind her termination and permit her to operate on patients in spite of a documented history of poor performance on standardized competency tests, compounded by multiple negative performance evaluations.

Instead, Plaintiff argues that her burden under the New York City administrative code is "much lower than it is under some relevant federal laws." Opp. at 20. She cites a decision from the New York Appellate Division, *Williams v. NYCHA*, 872 N.Y.S.2d 27, 36-37 (N.Y. App. Div. 2009), for the proposition that Courts must construe the NYCHRL "more broadly than federal civil rights laws and the [NYS]HRL." The relevant provision of the administrative code makes it an "an unlawful discriminatory practice for any [covered] person . . . not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question." N.Y.C. Admin Code § 8-107(15). The NYCHRL "places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business."

*Id.* § 8-107(205).   Yet Plaintiff cites no authority for the proposition that the reasonable-accommodation requirement embodied in the NYCHRL requires covered entities to make modifications to their programs above and beyond those required by federal law.   The Court need not decide that particular question.   Even under this purportedly relaxed standard, Plaintiff has failed to plausibly allege that her requested accommodation would have enabled her to "satisfy the essential requisites of [her] job" at Montefiore, as required to make a *prima facie* case under the NYCHRL.   *Id.* § 8-107(15).

The conditions of her reinstatement to the Montefiore program imposed by what Plaintiff characterizes as the Appeal Board, passage of the USMLE Step 3 examinations and achievement of a 30th percentile score on the ABSITE by the first day of the program, Compl. ¶ 155, were, the Court can reasonably infer, designed to ensure that Plaintiff possessed the requisite competencies before entering her fifth year as a surgical resident.   These conditions—formulated before Defendants knew of the difficulties attending Plaintiff's second childbirth, *see id.* ¶¶ 155-156— must be evaluated in the context of Plaintiff's prior performance in the Program.   First, Plaintiff had already been required to repeat her PGY4 year based on poor performance; the decision was upheld on appeal the year prior.   *Id.* ¶ 95.   Second, she had scored poorly on two prior attempts at the ABSITE.   *See id.* ¶¶ 38, 43, 103.   Third, Plaintiff had received multiple negative evaluations during her tenure at Montefiore, including allegations that "a patient's liver bled when Plaintiff was performing a procedure."   *Id.* ¶ 159.   Considering these factors, the Court cannot conclude that Plaintiff has plausibly alleged that her requested accommodation—reinstatement in the Program from which she had been terminated prior to any demonstration of increased competence—was a reasonable one, or would have allowed her to "satisfy the essential requisites of [her] job," N.Y.C. Admin Code § 8-107(15).   *See Lazzari v. New York City Dep't of Parks &*

*Recreation*, 751 F. App'x 100, 103–04 (2d Cir. 2018) (affirming dismissal of plaintiff's NYCHLR claims where purported accommodation "would have undoubtedly constituted a hardship" to employer).   Accordingly, the Court dismisses all claims asserting a failure to reasonably accommodate Plaintiff's pregnancy or pregnancy-related disability.

## VII.   State Common Law Claims

With respect to Plaintiff's four common law claims, for breach of contract and breach of implied contract, Defendants initially moved the Court to decline to exercise supplemental jurisdiction.  Defendants make a more limited request in their reply brief, moving the Court only to dismiss the twelfth and fourteenth causes of action—which challenge the failure to promote Plaintiff in 2015—as unrelated to any federal claim over which the Court has original jurisdiction. The Court finds that all four common law claims are sufficiently related to Plaintiff's two surviving federal claims to warrant the exercise of supplemental jurisdiction.

"Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted). "A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact." *Id.* (internal quotation marks omitted).  The only remaining claims over which the Court has original jurisdiction concern Defendants' failure to promote Plaintiff to PGY5 in 2016, and Statter's provision of a "horrible milestone review" in December 2015.   Because they concern the same pattern of allegedly discriminatory behavior, the above claims likely involve many operative facts in common with the claims challenging Defendants' 2015 refusal to promote Plaintiff. *See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659

F.3d 234, 245 (2d Cir. 2011) (stating that supplemental jurisdiction is proper where state and federal claims arise "'out of approximately the same set of events'" (quoting *Treglia v. Town of Manlius,* 313 F.3d 713, 723 (2d Cir. 2002)).  Accordingly, the Court declines to dismiss these claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted except to the extent that it seeks dismissal of the twelfth, thirteenth, fourteenth, and fifteenth causes of action.  Plaintiff may proceed with those claims as well as her first and fourth causes of action to the extent that they allege violations of 42 U.S.C. § 1981.  The Clerk of Court is respectfully directed to terminate the item at docket number 39.

The stay of discovery is hereby lifted.  By no later than September 14, 2021, the parties shall jointly submit to the Court a proposed case management plan and scheduling order.  A template for the order is available at https://nysd.uscourts.gov/hon-ronnie-abrams.  Counsel for both parties shall appear for a status conference on September 21, 2021 at 2:30 p.m.  The Court will hold this conference by telephone.  The parties shall use the dial-in information provided below to call into the conference: Call-in Number: (888) 363-4749; Access Code: 1015508.  This conference line is open to the public.


SO ORDERED.

Dated:      August 31, 2021
            New York, New York

_____
Ronnie Abrams
United States District Judge