UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

OJINIKA IKEDILO, M.D.,

                Plaintiff,

v.

MINDY STATTER, M.D.,
JODY KABAN, M.D.,
SCOTT MELVIN, M.D., and
MONTEFIORE MEDICAL CENTER,

                Defendants.

No. 19-CV-9967 (RA)

OPINION & ORDER
ADOPTING REPORT &
RECOMMENDATION

RONNIE ABRAMS, United States District Judge:

    Plaintiff Ojinika Ikedilo brings this action against Defendants Mindy Statter, Jody Kaban, Scott Melvin, and Montefiore Medical Center ("Montefiore") for violations of 42 U.S.C. § 1981 and breach of contract under New York law. In a Report and Recommendation dated July 27, 2023, Magistrate Judge Netburn recommended granting Defendants' motion for summary judgment in full.[1] *Ikedilo v. Statter*, No. 19-CV-9967 (S.D.N.Y. July 27, 2023), ECF No. 95 ("R&R"). For the reasons that follow, the Court adopts the conclusions of the R&R in full.

## BACKGROUND

    The Court assumes the parties' familiarity with the factual background and procedural history of this action, which are detailed, among elsewhere, in the R&R, and summarizes only the most pertinent facts here. Plaintiff Ojinika Ikedilo is a Black woman of Nigerian descent who was enrolled in Montefiore's surgical residency program from 2011 until her residency was terminated

---

[1] By Order dated August 1, 2023, Judge Netburn considered Plaintiff's untimely response to Defendants' Rule 56.1 Statement but did not alter her July 27, 2023 recommendation. *Ikedilo v. Statter*, 2023 WL 4883313 (S.D.N.Y. Aug. 1, 2023) ("Aug. 1 Order").

in 2016.  *See* Def. 56.1 Statement of Facts, ECF No. 72 ("Def. 56.1") ¶¶ 11, 54, 167.  Defendant Statter is Montefiore's former residency program director, Defendant Kaban a former assistant program director at the residency program, and Defendant Melvin a professor of surgery at Montefiore.  *Id.* ¶¶ 2, 7, 10.

To become a practicing surgeon, residents must pass all three steps of the United States Medical Licensing Exam ("USMLE").  *Id.* ¶ 16.  Individuals must also pass a certification exam given by the American Board of Surgery ("ABS") to be board certified.  *Id.* ¶ 20.  Each year, surgical residents take the American Board of Surgery In Training Examination ("ABSITE"); the ABS has found a correlation between a resident scoring at or above the 30th percentile on the ABSITE and passing the qualifying board examination after their residency.  *Id.* ¶¶ 35, 43.  Ikedilo failed Step 3 of the USMLE in 2010, 2014, and 2017.  *Id.* ¶ 18.  In addition, from 2013 to 2016, Ikedilo took the ABSITE and scored in the seventh percentile, sixth percentile, first percentile, and second percentile, respectively.  *Id.* ¶¶ 39-42.

On June 3, 2015, during her fourth residency year, Ikedilo received a letter from Defendant Statter, notifying her that she would not be promoted to a fifth-year resident; that she must repeat her fourth year; and that she must complete various remediation requirements.  *Id.* ¶¶ 117-18, 122.  After Ikedilo exercised her right to appeal the non-promotion decision and attended a full day hearing before a due process committee, the hearing panel upheld the non-promotion decision.  *Id.* ¶¶ 128-134.  On April 23, 2016, Ikedilo received another letter from Defendant Statter, notifying her that she would be terminated on June 30, 2016.  *Id.* ¶ 141.  The letter explained that Ikedilo had failed to meet various remediation requirements and outlined additional areas of concern.  *Id.* ¶ 144.  Ikedilo then exercised her right to appeal the termination, which included attending a full day termination hearing in August 2016 and submitting a rebuttal document.

*Id.* ¶¶ 147-161. In November 2016, the termination hearing panel decided that Ikedilo could return to Montefiore if she passed Step 3 of the USMLE and achieved a score at or above the 30th percentile of the ABSITE. *Id.* ¶ 167. In January 2017, however, Ikedilo failed the Step 3 exam and scored in the second percentile of the ABSITE. She subsequently received a letter stating that her termination was final. *Id.* ¶¶ 168-171.

Ikedilo initiated this action on October 28, 2019 and filed an amended complaint—the now operative complaint—on October 30, 2020. Pl. Am. Compl., ECF No. 38. On August 31, 2021, this Court granted in part Defendants' motion for partial dismissal. *Ikedilo v. Montefiore Med. Ctr.*, 2021 WL 3887717 (S.D.N.Y. Aug. 31, 2021). After Defendants moved for summary judgment, the Court referred the case to Judge Netburn for a report and recommendation.

In the R&R, Judge Netburn recommended granting Defendants' motion for summary judgment in full. In particular, Judge Netburn recommended: (1) granting summary judgment on Ikedilo's Section 1981 claim that Defendants discriminated against her on the basis of race because Plaintiff failed to establish a prima facie case of discrimination; (2) granting summary judgment on Ikedilo's claim that Defendant Statter unlawfully retaliated against her for complaining of discrimination because Plaintiff failed to put forward sufficient evidence of retaliation; and (3) granting summary judgment on Ikedilo's claims that Defendants breached an actual or implied contract because the relevant contract allowed Defendants to impose reasonable conditions on Ikedilo's promotion.

Ikedilo filed timely objections to the R&R on August 15, 2023, and Defendants filed a response on September 18, 2023. Ikedilo objects to each of Judge Netburn's recommendations, except with respect to her retaliation claim under Section 1981.

**LEGAL STANDARD**

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "must make a de novo determination of the portions of the report to which timely objections are made," but in the absence of such objections, "a district court need only satisfy itself that there is no clear error on the face of the record." *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009) (internal quotation marks omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted). A fact is material if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary [under the governing law] will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the Court must view all facts in the light most favorable to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

While "[t]he movant has the burden of showing that there is no genuine issue of fact," the non-moving party "is not thereby relieved of [her] own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256. In other words, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial" to defeat summary judgment. *Id.*; *see also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[I]f the [defendant] has made a properly submitted motion [for summary judgment], the plaintiff may not respond

4

simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden ….").

## DISCUSSION

Given Ikedilo's timely objections, the Court applies de novo review to each of the objected claims, except with respect to the retaliation claim under Section 1981, to which Plaintiff does not object.[2] Finding no clear error on the retaliation claim, Defendants' motion for summary judgment as to that claim is granted. The Court now turns to Plaintiff's objections to the R&R.

### I. Plaintiff's Section 1981 Discrimination Claims

Section 1981 discrimination claims are governed by a four-part framework to determine if a plaintiff has established a prima facie case of discrimination. *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). To survive summary judgment, a plaintiff bears the burden of showing that (1) she belongs to a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference of discriminatory intent. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). A plaintiff can raise an inference of discrimination by establishing that an employer subjected her to "disparate treatment" (i.e., treating her less favorably than a similarly situated employee outside her protected class). *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To succeed, a plaintiff "must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

---

[2] Defendants argue that the Court should review Plaintiff's objections under a clear error standard. Because timely objections were made, however, and because the objections are not general, conclusory, or overly repetitive, the Court declines to review under clear error.

5

In the R&R, Judge Netburn found that Ikedilo did not establish a prima facie case of discrimination because she failed to "identify a single other individual who was similarly situated in multiple ways, let alone *all material respects*." R&R at 10. Although Plaintiff made "fleeting reference[s]" to non-Black Montefiore residents who had failed Step 3 without similar consequences, Judge Netburn further concluded that Plaintiff's proffered evidence did not give rise to an inference of discriminatory intent. *Id.* at 10-11. The R&R also noted that, while "not dispositive," other Black and Nigerian residents graduated from the same program "at nearly the same time" as Plaintiff, and Plaintiff "never suggested at her administrative appeals that her non-promotion or termination were racially motivated." *Id.* at 11.

Plaintiff objects to the R&R on five primary grounds: (1) the court applied the wrong standard governing Plaintiff's alleged disparate treatment; (2) the court failed to properly consider the whole record by accepting too many facts as undisputed in Defendants' Rule 56.1 Statement; (3) the court did not accord proper significance to Plaintiff's semi-annual reviews in 2015 and 2016; (4) the court did not accord proper significance to the testimony of (and report by) Plaintiff's expert witness; and (5) the court improperly relied on other, immaterial facts.

**A. Disparate Treatment Standard**

Plaintiff first challenges Judge Netburn's conclusion that Ikedilo must present a comparator "similarly situated in all material respects" to find an inference of discriminatory intent. Pl. Objection to R&R, ECF No. 98 ("Pl. Obj.") at 12. Instead, she insists that "all she has to prove is that she is treated differently in the same type of circumstances when individuals who were not of her own race were treated better." *Id.* Plaintiff misstates the law.

Lacking any direct evidence of discriminatory intent, Plaintiff can only establish a prima facie case of discrimination by showing that Montefiore subjected her to disparate treatment.

6

Judge Netburn correctly articulated that Plaintiff must show she was treated differently than non-Black residents who were otherwise "similarly situated in all material respects." *Shumway*, 118 F.3d at 64.  As the Second Circuit held in *Graham*, comparators "need not be identical," but there must be "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases …." 230 F.3d at 39.  *See also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *Ruiz v. Cnty. Of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).  *Cf. Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022).

Plaintiff has not met her burden here.  To establish disparate treatment, Ikedilo points to several possible comparators, including one non-Black resident who allegedly scored a zero in ABSITE, another non-Black resident who had "low ABSITE and bad evaluations all his years," and a third resident who was "doing poorly in all respects."  Pl. 56.1 Counter Statement of Facts, ECF No. 80 ("Pl. 56.1") ¶¶ 197, 282-83.  But these comparators are unavailing.  Plaintiff does not point to any Montefiore resident with a similar academic record (e.g., failing the USMLE Step 3 several times) or similarly poor performance reviews.  *See Gelin v. Geithner*, 2009 WL 804144, at *18 (S.D.N.Y. Mar. 26, 2009) ("[Plaintiff] has produced no evidence to show that they were similarly situated to him in terms of the quality of their performance, their disciplinary records, or other material factors …."), *aff'd*, 376 F. App'x. 127 (2d Cir. 2010).  Ikedilo also asserts that approximately 15 to 20 residents score below the 30th percentile in ABSITE each year and that "[m]any residents" at Montefiore took their USMLE Step 3 in their fifth year, Pl. 56.1 ¶¶ 148, 193, but she fails to name a particular comparator whose ABSITE was comparably low, failed the USMLE Step 3 numerous times, and/or otherwise bore "a reasonably close resemblance" to herself.  *Graham*, 230 F.3d at 39.  Accordingly, the Court agrees with Judge Netburn that Plaintiff has failed to establish a prima facie case of discrimination.

### B. Rule 56.1 Standard

Plaintiff also objects to Judge Netburn's alleged failure to "consider the whole record." Pl. Obj. at 14. She claims that Judge Netburn "primarily restrict[ed] herself to Defendant[s'] Rule 56.1 Statement which only told half-of the story" and that the court therefore "committed a reversible error." *Id.* at 17. Not so. Indeed, Judge Netburn's R&R and subsequent Order make clear that she reviewed the entire record and applied the proper standard of review. As an initial matter, in spite of Plaintiff's failure to timely respond to Defendants' Rule 56.1 Statement, Judge Netburn "accept[ed] Plaintiff's late-filed Response, [took] it under consideration, and read it in the light most favorable to Plaintiff as the party opposing summary judgment." Aug. 1 Order at 1. Judge Netburn also considered each of Plaintiff's new assertions and explained why they did not alter her prior recommendation. *Id.* at 2-4. And she applied Rule 56.1 correctly. Rule 56(e)(2) of the Federal Rules of Civil Procedure provides that if a party "fails to properly address another party's assertion of fact" the court may "consider the fact undisputed for purposes of the motion." Local Rule 56.1 further states that the party opposing a motion for summary judgment "shall … respond[] to each numbered paragraph in the statement of the moving party" and that statements "will be deemed to be admitted … unless specifically controverted by a correspondingly numbered paragraph …." Local Civil Rule 56.1(b)-(c). Judge Netburn thus correctly found that because Plaintiff responded to "only 54 of the 192 paragraphs" contained in Defendants' Rule 56.1 Statement, the remaining paragraphs were to be deemed uncontested. Aug. 1 Order at 2.

On de novo review, the Court also disagrees with Ikedilo that assertions in Defendants' Rule 56.1 Statement were "conclusory," "out of conte[x]t," or otherwise written in such a way that Plaintiff "could not … counter each and every statement." Pl. Obj. at 14-15. Each of the undisputed assertions in Defendants' Rule 56.1 Statement clearly cited to the record and, as Judge

Netburn noted, Ikedilo "left uncontested the vast majority of the decidedly negative evaluations and metrics cited by Defendants." Aug. 1 Order at 3. The Court also agrees with Judge Netburn that much of Plaintiff's own Counter Statement "consist[ed] in large part of argument, conclusory statements, and speculation as to the Defendants' state of mind." R&R at 1 n.2. Judge Netburn therefore did not err.

### C. Ikedilo's Semi-Annual Reviews

Plaintiff further submits that Judge Netburn's recommendation is "clearly erroneous based on the law" because the court did not properly consider evidence that, in 2015 and 2016, Ikedilo "met expectations" but was still not promoted and eventually terminated. Pl. Obj. at 3. Plaintiff points to two semi-annual reviews as "objective" indicators that Ikedilo "satisfie[d] the employer's needs and merit[ed] promotion." *Id.* at 4-5. In the 2015 review, for instance, Plaintiff received a notation of "Meets Expectations" on several competencies, including "Systems-Based Practice," "Practice-Based Learning and Improvement," "Professionalism," and "Interpersonal and Communication Skills." Pl. Aff., ECF No. 81, Ex. 2. Plaintiff's 2016 review included the same "Meets Expectations" notation on all seven competencies. Pl. Aff., Ex. 3. According to Ikedilo, because she met Montefiore's expectations by an "objective" standard, Judge Netburn should have found that her termination was based on a "procedural irregularit[y]" or otherwise an "inconsistent application of the employer's policies [which] can create an inference of discrimination." Pl. Obj. at 4. The very fact she was not promoted despite "meet[ing] expectations," Ikedilo contends, is "a material and fundamental disparate treatment" that must be "submitted to the jury." Pl. Obj. at 4. This argument fails.

First, Plaintiff does not explain why Montefiore's semi-annual reviews are any more "objective" than other indicators that Defendants considered. To determine if residents met their

9

"performance and promotion criteria," Defendants also reviewed residents' USMLE Step 3 scores, ABSITE scores, milestone evaluations, and "synthesize[d] all available information" and metrics. Def. 56.1 ¶¶ 19, 27, 30-31, 37, 47. Other Montefiore documents, moreover, plainly contradict Plaintiff's assertion that she had objectively met expectations during her fourth year. *See* Field Decl., ECF No. 75, Ex. S (showing that Ikedilo's average rating, as determined by attending physicians, was lower than the "peer average" in all sixteen areas of evaluation). *See also* Def. 56.1 ¶¶ 18, 39-42 (noting that between 2013 and 2016, Plaintiff's ABSITE scores ranged from the first percentile through the seventh percentile and that Ikedilo failed the USMLE Step 3 several times). In addition, Plaintiff's semi-annual reviews included non-objective information, such as negative written comments from reviewers. *See* Pl. Aff., Ex. 3 ("She can be quite defensive when she is criticized and even may try to convince you she knows what she is doing despite the fact that she does not."). As a result, Plaintiff fails to show that she met the "legitimate expectations of her employers," Pl. Obj.at 3, and she does not otherwise substantiate her disparate treatment claims. *See Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980) (explaining that, where an employer's explanation "is reasonably attributable to an honest even though partially subjective evaluation of ... qualifications, no inference of discrimination can be drawn").

Second, although procedural irregularities can create an inference of discrimination, the record does not support Plaintiff's assertion that Montefiore applied its own policies inconsistently or that other irregularities existed. Ikedilo cites *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997), where an "atypical committee was created because of the belief that [the plaintiff] would likely win the position if normal procedures were followed." *Id.* at 313. Here, by contrast, Montefiore followed its usual disciplinary procedures. The Clinical Competency Committee met regularly, terminated Plaintiff by typical protocols, provided notice and requirements for

remediation, and offered her the right to appeal, as well as a full day termination hearing before an independent committee. Def. 56.1 ¶¶ 31, 142-49. Plaintiff contests none of these facts. Instead, she argues that her remediation requirements—that she pass the USMLE Step 3 and achieve the 30th percentile on the ABSITE—were improper because they "only applied to her." Pl. Obj. at 4; Def. 56.1 ¶ 167. But four months earlier, Montefiore instituted a policy requiring that all second-year residents pass USMLE Step 3 "or they would not be promoted to the next year." *Id.* ¶ 19. And, although requiring an acceptable ABSITE score was a unique condition, it was neither "arbitrary" nor "capricious," as Plaintiff claims, due to all of Plaintiff's prior inadequacies and the correlation between an individual scoring above the 30th percentile and the likelihood of her passing qualifying board examinations. Pl. Obj. at 10. *See* Def. 56.1 ¶ 43. As the Second Circuit noted in *Zahorik v. Cornell University*, "universities are free to establish departmental priorities, to set their own required levels of academic potential and achievement and to act upon the good faith judgments of their departmental faculties or reviewing authorities." 729 F.2d 85, 94 (2d Cir. 1984).

Plaintiff's two semi-annual reviews indicating that she "met expectations," therefore, do not establish a prima facie case of discrimination or otherwise create a genuine dispute of material fact.

### D. Ikedilo's Expert Witness

Plaintiff next claims that Judge Netburn "disregarded" the testimony of expert witness Professor Cohn "in her decision-making process." Pl. Obj. at 8-9. Plaintiff provides no basis for this assertion, and the Court has no reason to believe that Judge Netburn failed to review Cohn's testimony or expert report. *See* Aug. 1 Order at 1. In any event, similar to the Ikedilo's semi-annual reviews, Cohn's testimony does not provide sufficient evidence to defeat summary

judgment. After all, Cohn had never worked for Montefiore, did not have firsthand knowledge of Montefiore's policies, and his testimony included conclusory and speculative statements. *See* Cohn Tr. at 68, 109, 127:4-13. ("[Y]ou would think that if someone meets expectations, in January of their fourth year, they're getting promoted to their chief year, unless they kill somebody or have a mental breakdown. That's the expectation. And you need to see something really egregious happening …. But she met expectation then, okay."). His testimony and expert report do not alter this Court's holding that Plaintiff failed to establish a prima facie case of discrimination.

### E. Other Evidence Judge Netburn Considered

Plaintiff also objects on the basis that Judge Netburn gave any weight to evidence that Ikedilo never complained about discrimination prior to filing her lawsuit, arguing that that evidence was "neither a relevant nor a material fact." Pl. Obj. at 12. Plaintiff argues that it was "clearly erroneous" for Judge Netburn to consider this fact and make it "almost issue determinative." *Id.* Plaintiff also submits that it was "clearly erroneous" for Judge Netburn to find that Ikedilo's "claim of discrimination was undermined by the fact that two Black residents graduated" from Montefiore. *Id.* at 3.

These objections are unavailing. As Judge Netburn explained, both considerations were "not dispositive" but merely "two additional undisputed facts" that she considered. R&R at 11. And no legal barrier prevents the Court from giving them weight. Indeed, courts regularly review whether individuals who faced alleged discrimination previously filed complaints. *See, e.g.*, *Osborne v. Literacy Partners, Inc.*, 2007 WL 2298354, at *6 (S.D.N.Y. Aug. 9, 2007); *Kho v. New York & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 721 (S.D.N.Y. 2018).[3] And when evaluating

---

[3] To be clear, Plaintiff rightly notes that some professionals may not wish to prematurely allege discrimination because such allegations may "poison the well." Pl. Obj. at 11. But this argument is not relevant here, where Ikadilo failed to allege discrimination even during her August 2016 termination hearing or in her rebuttal letter, months after leaving Montefiore. Def. 56.1 ¶¶ 149-157.

12

discrimination claims, courts also frequently consider if individuals in the same protected class were similarly mistreated. *See, e.g.*, *Akinde v. Bronx-Lebanon Hosp. Ctr.*, 2005 WL 2024891, at *7 (S.D.N.Y. Aug. 23, 2005); *Vasconcellos v. Mount Sinai Med. Ctr.*, 2011 WL 1097415, at *14 (S.D.N.Y. Feb. 16, 2011), *report and recommendation adopted*, 2011 WL 1046055 (S.D.N.Y. Mar. 22, 2011). Judge Netburn, therefore, did not err by considering this undisputed evidence.

Accordingly, having considered and rejected all five of Plaintiff's objections to the R&R on the Section 1981 discrimination claims, the Court adopts Judge Netburn's recommendation and grants Defendants' motion for summary judgment.

## II. Plaintiff's Breach of Contract Claims

Plaintiff also asserts several causes of action for breach of contract, claiming that Defendants breached either an actual or implied contract between Montefiore and Plaintiff. The relevant contract—the "House Officer Agreement"—outlines the requirements of Ikedilo's residency program and gives "the sole discretion" over "[r]eappointment and/or promotion" decisions to the Chairman of the Department of Surgery. Field Decl., Ex. 30. Reappointment and promotion decisions are also "contingent upon several factors" including "satisfactory performance." *Id.* Ikedilo claims that Defendants breached the contract's "implied covenant of good faith and fair dealing." Pl. Am. Compl. ¶ 199.

In the R&R, Judge Netburn concluded that Defendants did not breach the parties' contract. R&R at 16. Conditioning Plaintiff's promotion on reasonable performance metrics such as being at the 30th percentile of ABSITE, she found, was "entirely consistent with 'satisfactory performance' and 'furtherance of the Medical Center's objectives.'" *Id.* (quoting Field Decl., Ex. 30). As the R&R stated, "[n]o reasonable person in Plaintiff's position would have been justified

13

in expecting that, after several years of documented performance deficiencies, Defendants would not be able to impose reasonable conditions on a resident's promotion." *Id.*

Plaintiff objects to Judge Netburn's findings, alleging that "[t]he only way the Court could logically reach a conclusion that the contracts were not breached is to remove the need to act in good faith." Pl. Obj. at 19. The Court disagrees. As Judge Netburn correctly noted—and this Court previously observed—the remediation requirements imposed on Plaintiff were "designed to ensure that Plaintiff possessed the requisite competencies before entering her fifth year as a surgical resident." *Ikedilo*, 2021 WL 3887717, at *9. And, as a matter of law, an implied covenant "does not extend so far as to undermine a party's 'general right to act on its own interests ….'" *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990). Here, Montefiore had an interest in ensuring that residents are "qualified to take care of patients before they graduate the residency program," Def. 56.1 ¶ 127, and imposing reasonable remediation requirements to ensure as much did not breach any actual or implied contract. *See also Sundaram v. Brookhaven Nat. Lab'ys*, 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006) (noting that, under New York law, the implied covenant of good faith "does not create new contractual rights that are not enumerated in the express contract"). Accordingly, Judge Netburn correctly determined that Defendants be granted summary judgment on Plaintiff's breach of contract claims.

## CONCLUSION

For the foregoing reasons, the Court adopts in full Judge Netburn's thorough and well-reasoned Report & Recommendation. Defendants' motion for summary judgment is thus granted in full. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 71 and close this case.

Dated:   September 28, 2023
         New York, New York

                                                                 Hon. Ronnie Abrams
                                                                 United States District Judge